506 S.E.2d 336

Nancy STEPHENS and Timothy
Stephens, Plaintiffs Below,
Appellants,

v.

The WEST VIRGINIA COLLEGE OF
GRADUATE STUDIES, Defendant
and Third–Party Plaintiff Below.

Kenneth JARRETT, Associates in Coun-
seling and Training, Inc., a West Virgi-
nia Corporation, Linda Geronilla and
Elizabeth Conrad, Defendants and
Third–Party Plaintiffs Below, Appellees,

v.

HUMPHREYS MEMORIAL UNITED
METHODIST CHURCH, a West Virgi-
nia Unincorporated Association, and
Robert Sauvageot, in his capacity as
Chairman of the Humphreys Memorial
United Methodist Church Board of
Trustees, Third–Party Defendants Be-
low.

No. 24678.

Supreme Court of Appeals of
West Virginia.

Submitted May 5, 1998.

Decided July 10, 1998.

Mary M. Downey, Beverly S. Selby, Charleston, for Appellants.

Arthur T. Ciccarello, Ciccarello, DelGuidice & La Fon, Charleston, for Appellee, Kenneth Jarrett.

Charles F. Johns, Robert E. Gifford, Steptoe & Johnson, Clarksburg, for Appellees, Associates in Counseling & Training, Inc.; Linda Geronilla; Elizabeth Conrad; and Peggy Dent.

PER CURIAM: [1]

The plaintiffs below and appellants herein, Nancy and Timothy Stephens, appeal the August 28, 1997, order of the Circuit Court of Kanawha County that granted summary judgment to the defendants below and appellees herein, Associates in Counseling and Training, Inc.; Linda Geronilla; and Elizabeth Conrad [hereinafter collectively referred to as ACT or the defendants].[2] On

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. At this juncture, we wish to clarify which parties are presently before this Court as part of the instant appeal. First, the parties dispute whether the circuit court, in its order, granted summary judgment to defendant Jarrett. A review of the circuit court's order indicates that its award of summary judgment was, in fact, limited to defendants Associates in Counseling and Training, Inc.; Linda Geronilla; Elizabeth Conrad; and the West Virginia College of Graduate Studies. As the order does not specifically include defendant Jarrett within its scope, we find that he is not a proper party to the instant appeal. *See* W. Va.Code § 58–5–1(a) (1925) (Repl.Vol.

1997) (permitting appeal to Supreme Court of Appeals of West Virginia from a *"final* judgment, decree or order"* (emphasis added)); Syl. pt. 5, in part, *McDaniel v. Kleiss*, 198 W.Va. 282, 480 S.E.2d 170 (1996) ("Under W. Va.Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." (internal quotations and citation omitted)).

Similarly, the parties disagree as to whether the circuit court intended to include defendant Peggy Dent in its award of summary judgment to the defendants. Although the circuit court omitted reference to Dent in its order, the Stephenses characterize this omission as an oversight and

appeal to this Court, the Stephenses raise three challenges to the circuit court's ruling: (1) the circuit court improperly ·determined that the applicable statute of limitations barred their claims when their complaint was timely filed pursuant to the discovery rule, as explained in *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), and the continuing tort doctrine; (2) the circuit court incorrectly dismissed their claim of vicarious liability; and (3) the circuit court erroneously granted the defendants' motion for summary judgment when there existed genuine issues of material fact. Following a review of the parties' arguments, the record of the proceedings below, and the pertinent authorities, we affirm the decision of the Circuit Court of Kanawha County.

## I.

### FACTUAL BACKGROUND

The forecast of the evidence suggests the following facts. Nancy and Timothy Stephens were married in 1980. In or about January, 1991, they began attending weekly worship services and Bible study meetings at Humphreys Memorial United Methodist Church. Kenneth Jarrett also participated in Humphreys church activities. As a result of their church involvement, the Stephenses became acquainted with Kenneth Jarrett.

Kenneth Jarrett allegedly was a student at the West Virginia College of Graduate Studies in 1991. He worked, either as an actual employee or as an independent contractor, for Associates in Counseling and Training, Inc. [hereinafter ACT], from December, 1990, through June, 1991.[3]

ACT, located in Charleston, West Virginia, "provides counseling and employee assistance services." Linda Geronilla is the owner and director of ACT, and Elizabeth Conrad and Peggy Dent were counselors employed by ACT.

The events surrounding the underlying appeal appear to have begun in March, 1991, when Jarrett began providing counseling services to Mr. Stephens. The plaintiffs state that at some point during these sessions, Jarrett informed Mr. Stephens that he also would like to provide similar counseling to Mrs. Stephens. Mrs. Stephens went to ACT in early April, 1991, where she had numerous counseling sessions during which both Jarrett and Elizabeth Conrad were present. Mrs. Stephens states that she believed Conrad was Jarrett's supervisor. Contrariwise, ACT represents that it was not uncommon for friends and relatives to accompany clients of ACT's counselors to their counseling sessions and to remain present during these meetings. In this regard, ACT suggests that Jarrett was not a counselor employed by ACT, but rather accompanied Mrs. Stephens to her counseling sessions in the capacity of a supportive friend.

In late April, 1991, a counseling session for Mrs. Stephens was scheduled during which both Conrad and Jarrett were supposed to be present. Conrad recalls that she had an emergency situation to attend to and, after informing Mrs. Stephens and Jarrett of her conflicting commitment, excused herself from the room. Thereafter, Jarrett conducted a counseling session with Mrs. Stephens, during which he patted Mrs. Stephens' leg and kissed her before she left. Mrs. Stephens testified at her deposition that Jarrett assured her that this intimacy would be helpful in better understanding her husband's behaviors, but told her that "it was inappropriate for a counselor and a client to have that kind of relationship." Following this incident, Mrs. Stephens again met with both Conrad and Jarrett on several occasions, but Mrs. Stephens did not discuss the personal contacts between her and Jarrett.

After the intimate session between Jarrett and Mrs. Stephens, Jarrett began counseling Mrs. Stephens privately both at the ACT

---

presume that the circuit court similarly granted summary judgment to Dent. For the same reason discussed above with respect to defendant Jarrett, we find that defendant Dent is not a proper party to the instant appeal as the circuit court did not specifically include her within the scope of its summary judgment order.

**3.** The Stephenses urge that Jarrett was an actual employee of ACT who provided counseling services. The defendants intimate that Jarrett was merely an independent contractor who performed various marketing services for ACT.

offices and at other locations, including a motel, the Stephenses' home, Jarrett's home, Mrs. Stephens' workplace, church Bible study meetings, and the city park. Eventually, in May, 1991, Mrs. Stephens stopped going to ACT to receive counseling from Conrad and turned exclusively to Jarrett for such therapy. Mrs. Stephens indicated that, at Jarrett's suggestion, they began meeting at the above-described locations as these sites were closer to their residences than the ACT offices, which were located in Charleston. The parties do not dispute that during these private sessions Jarrett and Mrs. Stephens became increasingly more intimate and twice engaged in sexual relations. Respecting the increasingly personal nature of their relationship, though, it seems that Jarrett requested Mrs. Stephens not to reveal the true nature of their relationship in order to protect his professional reputation.

In early May, 1991, Mrs. Stephens was briefly hospitalized for suicidal ideation. Following her discharge, she spoke with Peggy Dent, another counselor employed by ACT, regarding her growing relationship with Jarrett, but without divulging his identity. Dent presumably understood of whom Mrs. Stephens spoke, but the parties do not indicate whether Dent commented upon the impropriety of such a relationship at that time. In June, 1991, during Jarrett's individual counseling of Mrs. Stephens, his business relationship with ACT terminated due to his voluntary change of employment.

Jarrett continued counseling Mrs. Stephens for approximately two years. In February, 1992, Mr. Stephens began counseling at ACT with Peggy Dent as a result of his suspicions that Jarrett and Mrs. Stephens were having an affair. Dent subsequently met with both Mr. and Mrs. Stephens and with each of them separately. During the individual sessions between Dent and Mrs. Stephens, in April, 1992, Mrs. Stephens confided that she was, in fact, having an affair. It is unclear whether Mrs. Stephens disclosed Jarrett's name to Dent, but Dent apparently knew that Mrs. Stephens' partner was a counselor as Dent informed Mrs. Stephens that she should report her therapist because his actions were "completely unac-

ceptable." It seems that Dent also informed Mrs. Stephens that she would sustain long-term injury from this inappropriate relationship. Mrs. Stephens contends that she was afraid to report Jarrett because she had become quite dependent upon him and did not want the relationship to end. She further was concerned that Jarrett would have difficulties with his employment if she reported his conduct.

Dent then informed Geronilla of the inappropriate relationship between Mrs. Stephens and her therapist. Geronilla told Dent to urge Mrs. Stephens to report her therapist to the Board of Examiners in Counseling, but Mrs. Stephens refused to do so, citing the above-stated reasons. The defendants represent, though, that Mrs. Stephens expressed a desire to end her relationship with her therapist in order to ameliorate the negative effects it was having on her relationship with her husband and family. Counseling between Dent and the Stephenses ended in late April, 1992.

In November, 1992, Mrs. Stephens again sought counseling from Conrad. During these sessions, which continued until December, 1992, Mrs. Stephens discussed her affair, and Conrad acknowledged that she knew of whom Mrs. Stephens spoke.

The plaintiffs indicate that Mrs. Stephens ended her counseling sessions with Jarrett in November, 1993. Thereafter, she obtained counseling from a variety of different professionals for numerous problems, including panic attacks, eating disorders, and severe depression. Jarrett and Mrs. Stephens ended their intimate relationship in April, 1995, when Jarrett moved to the state of Washington. After Jarrett's departure, Mrs. Stephens required extensive hospitalization for bulimia and depression.

On October 31, 1995, Mr. and Mrs. Stephens filed a complaint in the Circuit Court of Kanawha County against Jarrett and the West Virginia College of Graduate Studies [hereinafter COGS] alleging professional negligence, breach of fiduciary duty, and infliction of emotional distress. As a result of third-party pleadings and complaint amendments, ACT, Geronilla, Conrad, Dent, Humphreys Memorial United Methodist Church,

and the chairman of the Church's Board of Trustees also were ultimately named as defendants to the Stephenses' action.

Moving for summary judgment, COGS, ACT, Geronilla, and Conrad asserted that the Stephenses' claims were untimely filed pursuant to the applicable statute of limitations contained in W. Va.Code § 55-2-12(b) (1959) (Repl.Vol.1994).[4] By order entered August 28, 1997, the circuit court granted the defendants' motion for summary judgment. In so ruling, the court found

> that there are no genuine issues of material fact as to whether or not plaintiff [Mrs. Stephens] received reasonable notice of her potential cause of action and/or injuries when counselor Dent told plaintiff that her relationship with defendant Jarrett was improper and "wrong." The Court finds that notice by Dent to plaintiff Ms. Stephens clearly occurred in 1992, more than two years prior to the filing of this action. This action was filed on October 31, 1995.

Examining this Court's prior holding in Syllabus point 4 of *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997),[5] the circuit court then

> conclude[d] as a matter of law that the statute of limitations is not tolled by plaintiff's failure to distinguish the casual [*sic*] connection between defendant Jarrett and her alleged medical symptoms and difficulties. The record is clear that as of 1992 plaintiff Stephens was on notice that the relationship between defendant Jarrett and herself was improper and detrimental.

The court further determined that "plaintiffs' claims are statutorily time-barred and that plaintiffs' [*sic*] have failed to establish essential elements of the vicarious liability claim." Accordingly, the circuit court granted summary judgment to defendants ACT, Geronilla, and Conrad.[6] From this ruling of the circuit court, the Stephenses appeal to this Court.

## II.

### STANDARD OF REVIEW

■ The procedural posture of the case *sub judice* is an appeal from the circuit court's award of summary judgment. Rule 56(c) of the West Virginia Rules of Civil Procedure permits a circuit court to grant a party's motion for summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." We have interpreted this directive as allowing such a disposition "only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 2, in part, *Sisson v. Seneca Mental Health/Mental Retardation Council, Inc.*, 185 W.Va. 33, 404 S.E.2d 425 (1991) (internal quotations and citation omitted). Thus, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party. . . ." Syl. pt. 2, in part, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997) (internal quotations and citation omitted). Once a circuit court has determined that summary judgment is proper in a particular case, " '[a] circuit court's entry of summary judgment is reviewed de novo.' Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *id.*

## III.

### DISCUSSION

On appeal to this Court, the Stephenses assert three assignments of error: (1) the

---

4. W.Va.Code § 55-2-12(b) (1959) (Repl.Vol. 1994) directs "[e]very personal action for which no limitation is otherwise prescribed shall be brought . . . (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]"

5. *See infra* Section III.A.1. for the relevant text of *Gaither*.

6. The circuit court also granted the summary judgment motion of defendant West Virginia College of Graduate Studies. On appeal to this Court, though, the Stephenses do not contest the circuit court's ruling as to COGS. Furthermore, the parties represent that third-party defendants below Humphreys Memorial United Methodist Church and Robert Sauvageot were voluntarily dismissed prior to the circuit court's summary judgment ruling. Accordingly, they are not parties to the instant appeal.

circuit court erroneously granted summary judgment to the defendants when the discovery rule and the continuing tort doctrine rendered the Stephenses' complaint timely filed; (2) the circuit court improperly dismissed the Stephenses' claim against the defendants for vicarious liability; and (3) the circuit court incorrectly granted summary judgment to the defendants when there existed genuine issues of material fact.

### A.  Timeliness of Filing of Complaint

The Stephenses first contend that the circuit court improperly found their claims to be time-barred by the applicable statute of limitations.  In this regard, they set forth two arguments to demonstrate the timeliness of their complaint: the *Gaither* decision and the continuing tort doctrine.

#### 1.  Discovery Rule

The Stephenses first argue that the circuit court erred by granting summary judgment to defendants ACT, Geronilla, and Conrad based upon its finding that their complaint was barred by the applicable statute of limitations.  Rather, the Stephenses contend that their lawsuit was timely filed pursuant to the discovery rule as defined by *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901.  The defendants dispute the Stephenses' contention that the *Gaither* interpretation of the discovery rule renders timely their complaint.

In their claims against ACT, the Stephenses seek to recover for their personal injuries resulting from Jarrett's sexual advances towards Mrs. Stephens during his alleged counseling sessions with her.  W. Va.Code § 55–2–12(b) (1959) (Repl.Vol.1994) provides a two-year statute of limitations for personal injury causes of action.  Therefore, to have been timely filed, the Stephenses' complaint must have been filed within two years of the date on which ACT tortiously injured the plaintiffs.

The Stephenses claim that, despite the two-year statute of limitations governing their causes of action against ACT, they are not bound by this limited filing period because the discovery rule operates to extend the time within which they were required to file their complaint.  As defined by this Court in Syllabus point 4 of *Gaither,*

> [i]n tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Pursuant to this theory, the Stephenses state that Mrs. Stephens did not realize her injuries resulting from her "counseling" with Jarrett, or appreciate their relationship to Jarrett's actions, until April, 1995, while she was receiving counseling from a different therapist.  Because their complaint was filed in October, 1995, within two years of the date on which Mrs. Stephens discovered her injuries, they maintain that their complaint was timely filed.

We reject the Stephenses' contentions in favor of the circuit court's ruling that Mrs. Stephens knew, long before April, 1995, of the injuries occasioned by Jarrett's misconduct.  The record evidence suggests that Jarrett was employed by ACT from December, 1990, through June, 1991.  If, as the Stephenses allege, Jarrett's misconduct began at the time he was employed by ACT and could be attributable, in some measure, to ACT, then the Stephenses would have had two years from this time, until December, 1992, through June, 1993, within which to file their claims against ACT. Facially, their failure so to file renders their complaint untimely pursuant to the two-year statute of limitations.

However, the Stephenses maintain that, because Mrs. Stephens did not discover until much later that she had been injured and that such injuries were attributable to Jarrett's sexual advances, the discovery rule operates to toll the otherwise applicable statute of limitations.  Contrary to the Stephenses' assertions, though, the record clearly demonstrates that ACT counselors in both spring,

1992, and fall, 1992, indicated to Mrs. Stephens that the relationship she was having with her unnamed therapist (Jarrett) was harmful to her. Furthermore, defendant Dent indicated that, in spring, 1992, she informed defendant Geronilla of Mrs. Stephens' affair with her counselor. Geronilla instructed Dent to emphasize to Mrs. Stephens the impropriety of her therapist's behavior and to encourage Mrs. Stephens to report his unethical conduct to the appropriate professional board. Despite these warnings to Mrs. Stephens, however, she refused to file a formal complaint, explaining that she did not want to get Jarrett into any trouble. Mrs. Stephens also allegedly informed her counselors at ACT that the relationship with her therapist had ended when, in fact, it had not. Given these facts, it is apparent that if ACT's conduct rendered it liable to Mrs. Stephens, such liability would have attached either in the spring of 1992 or the fall of 1992, and could have been the subject of a civil action no later than the spring of 1994 or the fall of 1994. Because the Stephenses did not file their complaint until October, 1995, well after the passing of either of these dates, their claims against ACT are time-barred.[7] Hence, we affirm the decision of the Circuit Court of Kanawha County granting summary judgment to the defendants based upon the untimely filing of the Stephenses' complaint.[8]

## 2. Continuing Tort Doctrine

The Stephenses next claim that, even if the discovery rule does not render their complaint timely filed, their lawsuit was commenced within the applicable statutory filing period pursuant to the continuing tort doctrine. In support of this contention, they cite *Harmon v. Higgins,* 188 W.Va. 709, 426 S.E.2d 344 (1992), for the proposition that the statute of limitations governing personal injuries does not begin to run until the last occurrence of offensive contact or threat thereof. Further buttressing their argument, the Stephenses cite *DeRocchis v. Matlack, Inc.,* 194 W.Va. 417, 460 S.E.2d 663 (1995), as holding that when a plaintiff sustains several similar, but separate and distinct, injuries, each separate injury gives rise to a separate and distinct cause of action. Thus, the Stephenses submit that since the

---

**7.** We note that our finding that the Stephenses' claims against ACT are barred by the applicable statute of limitations does not affect the validity of their causes of action against Jarrett, which were not addressed in the circuit court's summary judgment order. We also do not consider whether the nature of Mrs. Stephens' psychological condition, for which she required treatment by way of counseling, prevented her from earlier recognizing or appreciating her injuries resulting from her relationship with Jarrett.

**8.** The Stephenses also intimate that the circuit court's decision to grant summary judgment to the defendants improperly infringed upon the ability of a jury to determine the date of commencement of the applicable statute of limitations governing their claims. *Citing* Syl. pt. 3, in part, *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990) ("Where a cause of action is based on tort . . ., the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and *determining that point in time is a question of fact to be answered by the jury.*" (emphasis added by the Stephenses)). Nevertheless, this argument does not nullify our conclusion that the circuit court properly awarded summary judgment in this case because

[t]he mere fact that a particular cause of action contains elements which typically raise a factual issue for jury determination does not automatically immunize the case from summary judgment. The plaintiff must still discharge his or her burden under West Virginia Rule of Civil Procedure 56(c) by demonstrating that a legitimate jury question, i.e. a genuine issue of material fact, is present.

Syl. pt. 1, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995). Moreover, as we explain in Section III.C., *infra,* we find that the Stephenses have failed to convince this Court of the existence of a genuine issue of material fact so as to render inappropriate the disposition of this case by summary judgment.

Finally, the defendants rely upon this Court's prior holding in *Cart v. Marcum* to support their contentions that the discovery rule does not render timely the Stephenses' complaint. *See* Syl. pt. 3, *Cart v. Marcum,* 188 W.Va. 241, 423 S.E.2d 644 (1992) ("Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury."). Because the contemplation of this case law is not necessary to our resolution of the instant appeal, we decline further to consider this argument.

statute of limitations for a continuing tort begins to run upon the occurrence of each injury without respect to prior and subsequent injurious occurrences, they timely filed their complaint on October 31, 1995, which was within two years after Mrs. Stephens' last sexual contact with Jarrett in November, 1993.

Rejecting the plaintiffs' attempt to salvage their claims based upon the continuing tort doctrine, the defendants represent that the rule provides that "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from[,] the date of the last injury, or when the tortious overt acts cease." *Handley v. Town of Shinnston*, 169 W.Va. 617, 619, 289 S.E.2d 201, 202 (1982) (per curiam) (internal quotations and citations omitted). In this regard, "the concept of a continuing tort requires a showing of repetitious, wrongful conduct.... [A] wrongful act with consequential continuing damages is not a continuing tort." *Ricottilli v. Summersville Mem'l Hosp.*, 188 W.Va. 674, ·677, 425 S.E.2d 629, 632 (1992). Because the Stephenses' claims against ACT primarily aver vicarious liability and negligent supervision, ACT asserts that its alleged tortious conduct ceased when Jarrett terminated his employment with ACT in June, 1991. Thus, the defendants claim, the continuing tort doctrine does not render timely the Stephenses' claims.

While the Stephenses have thoroughly presented their continuing tort argument for appellate review by this Court, we can find no indication in the record before us that this issue was presented to and considered by the circuit court during the underlying summary judgment proceedings. Generally, we have held that a circuit court speaks through its orders. *See State v. White*, 188 W.Va. 534, 536 n. 2, 425 S.E.2d 210, 212 n. 2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)); *State ex rel. Erlewine v. Thompson*, 156 W.Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]" (citations omitted)). We also have held that we will not address, for the first time on appeal, a

matter that has not been considered by the circuit court. *See* Syl. pt. 2, *Trent v. Cook*, 198 W.Va. 601, 482 S.E.2d 218 (1996) (" '[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.' Syl. Pt. 6, in part, *Parker v. Knowlton Const. Co., Inc.*, 158 W.Va. 314, 210 S.E.2d 918 (1975)."); Syl. pt. 4, *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.*, 157 W.Va. 93, 199 S.E.2d 308 (1973) ("This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court.") *See also* Syl. pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.").

The record presented to the Court in this case does not suggest that the circuit court had an opportunity to consider the Stephenses' argument that the continuing tort doctrine tolled the applicable statutory filing period. In its present form, the circuit court's summary judgment order does not address the continuing tort argument, and the record does not contain a transcript of the summary judgment hearing, thereby rendering it nearly impossible to ascertain whether the Stephenses made this argument to the circuit court. A further reference to this hearing, contained in one of the Stephenses' replies to the defendants' motions for summary judgment, indicates, in fact, that the continuing tort argument was not raised during the parties' oral arguments at the summary judgment hearing. See Plaintiff's Response to Defendant West Virginia Graduate College [*sic*] Motion for Summary Judgment, at 8 (filed June 17, 1997) ("Although not mentioned during oral argument, in addition to the fact that the statute of limitations should not run until the plaintiff knows that the conduct of the defendant has a causal relation to his or her injury, another reason exists causing the case at bar to fall within the statute of limitations. As explained in Plaintiff's Answer to Defendants[']

[ACT's] Motion for Summary Judgement filed with this Court [sic] the continuing tort doctrine tolls the statute of limitation for the duration of the treatment period."). Because we can find no indication that the circuit court had an opportunity to rule upon this issue, we find that it s not ripe for decision by this Court and decline further to address this matter.[9]

## B. Dismissal of Vicarious Liability Claim

In addition, the Stephenses contest the circuit court's finding that they failed to adequately establish their claim of vicarious liability. They state that, because they believed, in good faith, that Jarrett was employed by ACT as a counselor and because ACT allegedly permitted the Stephenses to continue in this belief, ACT is vicariously liable for the injuries they sustained as a result of Jarrett's inappropriate and unethical relationship with Mrs. Stephens. *Citing* Syl. pt. 3, *Levine v. Peoples Broadcasting Corp.*, 149 W.Va. 256, 140 S.E.2d 438 (1965) (holding that questions of whether there existed employer-employee relationship and whether employee was acting within scope of such relationship are factual issues to be determined by jury); Syl. pt. 1, *General Elec. Credit Corp. v. Fields*, 148 W.Va. 176, 133 S.E.2d 780 (1963) (describing circumstances in which one is estopped from denying existence of agency relationship); Restatement (Second) of Agency § 219(2)(d) (1958) (holding principal liable for agent's acts committed outside scope of agent's employment where agent's tortious conduct was aided by existence of agency relationship).

Reviewing the Stephenses' contentions as to this issue, we decline to address this matter as our determinations that the discovery rule does not extend the applicable filing period and that the continuing tort issue has been improperly submitted to this Court have rendered moot the Stephenses' assignment of error regarding vicarious liability.

The issue of defendant ACT's vicarious liability for Jarrett's actions is relevant only insofar as the discovery rule and/or the continuing tort doctrine render timely the assertion of this cause of action. Because the Stephenses have been unsuccessful in their attempts to persuade this Court of the timeliness of their complaint pursuant to either of these theories, they are statutorily time barred from asserting a specific cause of action, alleging vicarious liability or any other claim, against defendant ACT for injuries resulting from Jarrett's purported counseling of Mrs. Stephens.

## C. Genuine Issues of Material Fact to Preclude Grant of Summary Judgment

■ Lastly, the Stephenses complain that the circuit court erroneously granted summary judgment to ACT when there existed genuine issues of material fact. In this respect, they suggest that the circuit court improperly found the relationship between Jarrett and Mrs. Stephens to have been voluntary when expert witnesses for the Stephenses indicated that an intimate relationship between a therapist and his/her patient is unethical and therefore of questionable voluntariness. *Citing* Syl. pt. 1, *Weaver v. Union Carbide Corp.*, 180 W.Va. 556, 378 S.E.2d 105 (1989) (recognizing cause of action for malpractice where counselor has been sexually intimate with his/her patient).

■ Following a *de novo* review, we find that the circuit court did not improperly grant summary judgment because there existed no genuine issues of material fact.

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy

---

9. As Jarrett is not a proper party to the instant appeal, we refrain from determining whether the continuing tort doctrine would apply to the Stephenses' claims against this defendant. We note further that, given our affirmance of the circuit court's final order granting summary judgment

to defendants ACT, Geronilla, and Conrad, the Stephenses essentially are prohibited from rearguing, before the circuit court, their assertion of the continuing tort theory with respect to these defendants.

issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. pt. 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995). While the Stephenses are correct in their contention that there continue to exist disputed factual issues in both the underlying case and the instant appeal, these facts are not material to the circuit court's decision granting summary judgment based upon the untimely filing of the Stephenses' complaint. With this assignment of error, the Stephenses complain primarily about whether the circuit court erroneously determined the relationship between Jarrett and Mrs. Stephens to have been voluntary. As the claims against ACT are barred by the applicable statute of limitations and as this issue tends to be more determinative of the Stephenses' claims against Jarrett, which were not dismissed by the circuit court's summary judgment order, we find that the circuit court did not err by granting summary judgment to ACT.[10]

## IV.

## CONCLUSION

For the foregoing reasons discussed in the body of this opinion, the decision of the Circuit Court of Kanawha County is affirmed.

Affirmed.

WORKMAN, J., disqualified.

REED, Judge, sitting by temporary assignment, dissents.

---

10. We recognize, too, that there exist questions as to the true nature of Jarrett's employment by ACT. *See supra* note 3 and text at page 338. However, since we concur with the circuit court's conclusion that the Stephenses' claims against ACT were untimely filed and that the statute of limitations therefore precludes the maintenance of any claims against ACT, we find

the resolution of this factual matter to be unnecessary to the decision of this case.